**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **1:11-CR-00026-LJO** |
| Plaintiff-Respondent, | **ORDER ON 28 U.S.C. § 2255 MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE (Doc. 547)** |
| v. | |
| **CARYLE LEE COLE,** | |
| Defendant-Petitioner. | |

## I. INTRODUCTION

Carlyle Lee Cole ("Petitioner"), a prisoner in federal custody, brings a pro se 28 U.S.C. § 2255 motion ("§ 2255 motion") to vacate, set aside, or correct his sentence. For the reasons discussed below, the Court DENIES Petitioner's motion.

## II. BACKGROUND OF THE CASE

On January 13, 2011, Petitioner, along with nine co-defendants, was indicted on charges of conspiracy to commit mail fraud, wire fraud, and bank fraud in violation of 18 U.S.C. § 1349, mail fraud in violation of 18 U.S.C. § 1341, wire fraud in violation of 18 U.S.C. § 1343, bank fraud in violation of 18 U.S.C. § 1344, and conspiracy to launder money in violation of 18 U.S.C. § 1956(h). Indictment as to Caryle Lee Cole, Doc. 1. In total, the indictment amounted to 56 violations. *Id.* On November 1, 2013, Petitioner signed a plea agreement with the Government, wherein he agreed to plead guilty to Count One of the Indictment. Mem. of Plea Agreement ("Plea Agreement"), Doc. 232 at 12. Petitioner waived

1

his right to trial as well as to appeal and other post-conviction remedies. *Id.* at 4, 16. Charges on the fifty-five other related counts were dismissed in consideration of this agreement. *Id.* The government agreed to recommend that the Petitioner's base offense level was seven, plus 32 levels associated with the size and sophistication of the criminal activities, but made "no other representations to him regarding sentencing." *Id.* 11-12. The agreement describes that the maximum potential sentence Petitioner might receive is thirty years. *Id.* at 15.

In a Change of Plea Hearing on November 7, 2013, the Court asked Petitioner how he wished to plead to the following crimes:

> To execute a scheme and artifice to defraud mortgage lending companies and federally insured lending/financial institutions, collectively referred to as "Lenders," of money and property from such Lenders by means of materially false and fraudulent pretenses, representations and promises; and to cause the United States mail and commercial carriers to be used in execution of the scheme to defraud, in violation of Title 18 of the United States Code section 1341; and to cause signs and signals to be transmitted by means of wire and radio communications in interstate commerce in furtherance of the scheme to defraud, in violation of Title 18 United States Code section 1343; and to defraud financial institutions and to obtain monies, funds, assets , and other properties under the custody and control of a financial institution by means of material false and fraudulent pretenses, representations, and promises in violation of Title 18 United States Code section 1344, all in violation of Title 18 of the United States Code section 1349.

Transcript of Change of Plea Hearing ("Plea Change Hearing"), Doc. 269, 15. To this question, Petitioner responded, "Guilty, your Honor." *Id.*

Prior to sentencing, Petitioner submitted a letter to the Court in which he stated: "I affirm that I take responsibility for illegal actions taken by me, my companies, and my employees. I accepted responsibility when I plead [sic] guilty and last appeared before your court. These fraudulent activities are without excuse." Def. Carlyle Lee Cole Statement for Sentencing ("Sentencing Statement"), Doc. 339-1.

At sentencing on February 24, 2014, the Court found the applicable offense level to be 36, with a Criminal History Category of "I" and a sentencing range of 188 to 235 months. Transcript of Sentencing Hearing ("Sentencing Hearing"), Doc. 464 at 14. The Court sentenced Petitioner to 211 months. *Id.* at 27.

On February 23, 2015, Petitioner filed the instant motion to "vacate, set aside and/or correct sentence, judgment conviction, plea & plea agreement pursuant to 28 U.S.C. § 2255." Habeas Motion, Doc. 547. He claims that he did not enter his plea "knowingly and voluntarily" for several reasons. First, Petitioner argues that he was not competent to plead guilty (ground one). *Id.* at 3-4. Next, Petitioner argues ineffective assistance of counsel on the basis that his former attorney, Katherine Hart, coerced him into pleading guilty (ground two); failed to obtain a psychiatric evaluation (ground three); failed to investigate his case thoroughly (ground four); and refused to file a direct appeal on his behalf (ground five). *Id.* at 10-12. Petition also argues that his plea is defective because the Court did not comply with Federal Rule of Criminal Procedure 11 (ground six) or inquire as to his mental status (ground seven) at his plea hearing. *Id.* at 4.

Petitioner also argues that his sentence is defective his attorney did not provide him with a presentence report ("PSR") (ground eight), the Court failed to inquire about his mental status at his sentencing hearing (ground nine); and the sentence was predicated on an involuntary guilty plea (ground ten). *Id.* at 8-9. Petitioner also argues that the plea agreement is void on its face because it includes illegal provisions (ground eleven). Petitioner did not expressly request an evidentiary hearing.

Upon request by this Court, Doc. 551, the government filed an opposition. Government's Opp'n to Def.'s 28 U.S.C. § 2255 Motion ("Opposition"), Doc. 574. The government argues that the record refutes Petitioner's allegations and that most of Petitioner's claims are procedurally defective. *Id.*

\\

### III. **STANDARD OF REVIEW**

A federal prisoner making a collateral attack against the validity of his or her conviction or sentence must do so by way of a motion to vacate, set aside or correct the sentence pursuant to 28 U.S.C. § 2255, filed in the court which imposed sentence. *Tripati v. Henman*, 843 F.2d 1160, 1162 (9th Cir. 1988). Under § 2255, the federal sentencing court may grant relief if it concludes that a prisoner in custody was sentenced in violation of the Constitution or laws of the United States. *United States v. Barron*, 172 F.3d 1153, 1157 (9th Cir. 1999). To warrant relief, a movant must demonstrate the existence of an error of constitutional magnitude that had a substantial and injurious effect or influence on the guilty plea or the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). Relief is warranted only where a movant has shown "a fundamental defect which inherently results in a complete miscarriage of justice." *Davis v. United States*, 417 U.S. 333, 346 (1974).

"Where a section 2255 motion is based on alleged occurrences outside the record, no hearing is required if the allegations, viewed against the record, either fail to state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *Shah v. United States*, 878 F.2d 1156, 1158 (9th Cir. 1989) (internal citations and quotations omitted). While a hearing may be required "[w]here section 2255 motions have been based on alleged occurrences outside the record," no hearing is required if "the issue of credibility can be conclusively decided on the basis of documentary testimony and evidence in the record." *Id.* Ultimately, "Section 2255 requires only that the district court give a claim careful consideration and plenary processing, including full opportunity for presentation of the relevant facts."

\\
\\
\\

# IV. ANALYSIS

**A.     Procedural Issues**

  **1.     Waiver**

The government argues that Petitioner waived his right to appeal and to file post-conviction proceedings, including relief under § 2255, in his Plea Agreement. Opposition at 9-12. A plea agreement is a contract and subject to contract law standards. *United States v. Trapp*, 257 F.3d 1053, 1056 (9th Cir. 2001). In a plea agreement, a Petitioner may waive his right to file a motion for relief under 28 U.S.C. § 2255 if done so expressly. *United States v. Nunez*, 223 F.3d 956, 959 (9th Cir. 2000); *United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994). The right to collaterally attack a judgment of conviction pursuant to § 2255 is statutory, and a knowing and voluntary waiver of a statutory right is enforceable; *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir.1993); *see also United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990) ("[I]t is not a due process violation for a Petitioner to waive, in an otherwise valid plea agreement, the statutory right of appeal."). Here, petitioner expressly waived both his right to appeal and his right to collaterally attack his sentence pursuant to 28 U.S.C. § 2255. Plea agreement at 4-5. Further, "[a]n unconditional guilty plea waives all non-jurisdictional defenses and cures all antecedent constitutional defects, allowing only an attack on the voluntary and intelligent character of the plea." *United States v. Brizan*, 709 F.3d 864, 866-67 (9th Cir. 2013). An appeal waiver may not be enforced "if the district court failed to comply with Federal Rule of Criminal Procedure 11, the court informed the Petitioner that she retained the right to appeal, the sentence did not comport with the terms of the plea agreement, or the sentence violated the law. *Id.* at 866 (citing *United States v. Bibler*, 495 F.3d 621, 624 (9th Cir. 2007)).

Petitioner's competency claim is not waived because it related to the "voluntary and intelligent character of the plea." *Id.* Petitioner's ineffective assistance of counsel claims based on grounds two

5

through four survive, as well as his challenges based on plea hearing deficiencies (grounds six and seven) are not waived for the same reason. Petitioner's ineffective assistance claim based on his attorney's failure to file an appeal (ground five), is waived because the conduct occurred *after* Petitioner pleaded guilty. Therefore, it could not have affected Petitioner's decision to enter into the plea.

Petitioner's sentencing claims based on grounds eight and nine are also waived because he does not assert that the sentence was illegal on actionable grounds. An "illegal" sentence includes "a sentence which is not authorized by the judgment of conviction . . . ," or "in excess of the permissible statutory penalty for the crime, or in violation of the constitution . . . " *United States v. Fowler*, 794 F.2d 1446, 1449 (9th Cir. 1986). Petitioner does not allege that the sentence he received meets these conditions. Thus, these claims are barred from consideration. *See Lange v. Belleque*, 372 F. App'x 750 (9th Cir. 2010) (upholding dismissal of motion to challenge sentence on the basis that such motion was waived). Petitioner's tenth claim, that his sentence must be set aside because his plea was involuntary, may proceed. *See United States v. Alonso*, 552 F. App'x 716, 717 (9th Cir. 2014) (vacating sentence where associated guilty plea was found to be involuntary).

### 2. **Procedural Default**

The government also argues that Petitioner's claims are procedurally deficient because he is raising them for the first time in a 2255 motion, rather than on direct appeal. Opposition at 12-14. Petitioner acknowledges that he never filed a direct appeal in this case. Habeas Motion at 17. It is well settled that "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (internal quotations omitted). "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Id.* This rule, however, "is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the law's important

6

interest in the finality of judgments." *Massaro v. United States*, 538 U.S. 500, 504 (2003). Thus, there are judicially created exceptions to it.

For example, an exception exists "if a Petitioner can demonstrate both 'cause' for not raising the claim at trial, and 'prejudice' from not having done so." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 351, (2006) (quoting *Massaro*, 538 U.S. 500 at 504). To establish cause, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *see also Bousley*, 523 U.S. at 622 (applying *Carrier* standard to § 2255 motion); *Cook v. Schriro*, 538 F.3d 1000, 1027 (9th Cir. 2008). "Cause . . . requires a showing of some external impediment *preventing* counsel from constructing or raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497 (1991) (emphasis in original) (quoting *Carrier*, 477 U.S. at 492).

Another exception applies if the Petitioner can show that he is "actually innocent." *Bousley,* 523 U.S. at 621. In *Bousley*, the Supreme Court explained that, "[t]o establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* at 623 (internal quotation marks omitted). It is unclear whether Plaintiff is now asserting that he is actually innocent. The closest statement to this effect is his argument that but for the issues he raised in this motion there was a reasonable probability that he would have been found innocent at trial. Habeas Motion at 50. Nevertheless, the sole evidence Petitioner provides is his own statement. This statement does not hold up to the evidence in the record, most notably his own statements in open court, in his Sentencing Letter, and in the Plea Agreement admitting that he is guilty of the charges brought against him. *See e.g.* Plea Change Hearing 13-15. Thus, he does not make a showing of actual innocence that would allow him to take advantage of this exception.

A third exception allows a criminal defendant to bring ineffective assistance of counsel claims under § 2255. *Massaro*, 538 U.S. 500 at 506 ("Subjecting ineffective-assistance claims to the usual

cause-and-prejudice rule also would create perverse incentives for counsel on direct appeal."); *United States v. Braswell*, 501 F.3d 1147, 1150 n.1 (9th Cir. 2007) ("Of course, as *Bousley* recognized, the cause and prejudice requirement does not apply to claims that 'could not be presented without further factual development.' Similar reasoning led the Supreme Court recently to exclude all ineffective assistance of counsel claims from the cause and prejudice requirement.") (internal citations omitted). Petitioner's claims based on grounds two through four fall into this category and may proceed.

Petitioner's challenges to the adequacy of his plea hearing (grounds six and seven) fail to meet any of these exceptions and are now barred. *See United States v. Garcia*, 159 F. App'x 780, 781 (9th Cir. 2005) (finding Rule 11 claim could not be raised for the first time in a 2255 motion). Similarly, Petitioner's sentencing claims based his attorney's failure to provide him with a PSR (ground eight) or the Court's failure to consider his mental status (ground nine) are also defaulted (in addition to having been waived) because they do not meet the exceptions.

Petitioner's competency claim (ground one) also fails. While the Ninth Circuit has not spoken directly on this issue, it has repeatedly stuck to its position that "most claims are procedurally defaulted by both federal and state prisoners in habeas proceedings when not raised on direct appeal, absent a showing of cause and prejudice or actual innocence." *United States v. Braswell*, 501 F.3d 1147, 1150 n.1 (9th Cir. 2007). Indeed, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." *Bousley*, 523 U.S. at 621. Petitioner presents no basis for finding that some external factor precluded him from pleading competency; therefore it can only be raised in the context of his ineffective assistance of counsel claim (ground three).

Finally, and for similar reasons, Petitioner's claim that the Plea Agreement is void on its face (ground eleven) is also defaulted.[1] No external impediment prevented Petitioner from bringing this claim

---

[1] This claim also fails on the merits. Petitioner first claims that a plea agreement may not waive post-conviction remedies.

8

at an earlier stage in the proceedings.

**B.     <u>Ineffective Assistance of Counsel Claims</u>**

Petitioner claims that his attorney's ineffective performance critically undermined the "voluntary and intelligent character" of his plea agreement. Habeas Motion, 41-44. Specifically, Petitioner alleges that his attorney: 1) coerced Petitioner into signing the plea agreement, 2) failed to research his case adequately, 3) failed to move for a psychiatric evaluation. Habeas Motion at 7-12.

The Sixth Amendment guarantees "the right to effective assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). Ineffective assistance of counsel claims are analyzed under the framework set out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *Ross v. Stewart*, 32 F. App'x 227, 228-29 (9th Cir. 2002). In *Strickland,* the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and "prejudice." 466 U.S. at 694. Establishing "deficient performance" requires the movant to show that counsel made errors so serious that she was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. "Deficient performance" means representation that "fell below an objective standard of reasonableness." *Stanley v. Cullen,* 633 F.3d 852, 862 (9th Cir. 2011) (citing *Strickland,* 466 U.S. at 688). To demonstrate prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome

---

Habeas Motion at 5-6. As discussed above, a defendant may effectively waive his right to appeal and to file a motion for relief under 28 U.S.C. § 2255. *See e.g. Nunez*, 223 F.3d at 959. Therefore, there is no reason why such a provision would invalidate a plea. Petitioner also claims that Plea Agreement erroneously describes his maximum sentence as thirty years. Habeas Motion at 7-8. Petitioner, however, provides no legal authority for this assertion. The government agreed to recommend that the Petitioner's base offense level was seven, but added 32 additional levels due to the size and sophistication of the criminal activities. Plea Agreement 11-12. Under the Sentencing Guidelines, such an offender should be sentence to between 262 months and life imprisonment, based on his criminal history. *See* United States Sentencing Commission, Sentencing Table, http://www.ussc.gov/sites/default/files/pdf/guidelines-manual/2014/2014sentencing_table.pdf. Therefore, it was not error to estimate that Petitioner's maximum sentence could have been 360 months.

of the proceeding.'" *Harrington v. Richter,* 562 U.S. 86 (2011) (quoting *Strickland,* 466 U.S. at 693). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the movant as a result of the alleged deficiencies. *Strickland,* 466 U.S. at 697.

The Supreme Court has held that "the two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart,* 474 U.S. 52, 58 (1985). In the context of guilty pleas, the first prong of the *Strickland* test echoes the standard of attorney competence set forth *McMann. Id.* at 58–59. "Where . . . a Petitioner is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *United States v. Lopez*, 182 F.3d 929 (9th Cir. 1999) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970). "The second, or 'prejudice,' requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill,* 474 U.S. at 59. "In other words, in order to satisfy the 'prejudice' requirement, the Petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill,* 474 U.S. at 59.

### 1. **Alleged Coercion**

Petitioner claims that he was coerced into signing his plea agreement and that his attorney did not provide him with a copy or review it with him ahead of time. Habeas Motion at 29. He contends that he was "forcibly ordered" to sign the plea agreement. *Id*.

The only evidence that Petitioner brings as to his attorney's alleged coercion is his own self-serving testimony. There is a significant amount of contrary evidence in the record. At his Plea Hearing, Petitioner affirmed specifically that he had reviewed "the entire document" and gone over it with his lawyer, and that he had no more questions on it. Plea Hearing at 11. When asked again by the Court if he

10

had "any questions at all," or if there was "any reason the Court should not accept the change of plea," Petitioner answered: "No, your Honor." *Id.* at 14. Petitioner also confirmed that was not forced and that no one threatened him to get him to change his plea. *Id.* at 13. There is a "strong presumption" of truthfulness afforded to "solemn declarations made in open court." *Chizen v. Hunter*, 809 F.2d 560, 562 (9th Cir. 1986). Further, Petitioner affirmed his guilt in a pre-sentencing letter to the Court, stating, "I accepted responsibility when I plead [sic] guilty and last appeared before your court." Sentencing Letter at 1.

Finally, Petitioner's attorney testifies that she discussed the Plea Agreement and the Sentencing Guidelines during a two and a half-hour meeting with Petitioner on October 17, 2013. Declaration of Katherine Hart ("Hart Decl."), Doc 574-3, ¶ 38. She attests she provided him a copy of the agreement, which he sent back to her, signed and with notes. *Id.*[2] Hart further describes that on the day of his Plea Hearing, she met with him for a total of four hours, during which she went over the terms of the agreement and the sentencing guidelines again. *Id.* at ¶ 39. She testified that she never forced or directed Petitioner to plead guilty, but that she explained to him the risks of going to trial. Hart Decl. ¶ 39. She further testified that she believed the Petitioner wanted to plead guilty to assist his son. This is consistent with Cole's statement in his Sentencing Letter that he urged his son to engage in illegal conduct and his request for mercy concerning his son's sentence. Sentencing Letter at 3.

In light of the substantial record on this issue, the Court finds Petitioner's claim that he was coerced into signing the plea agreement to be without merit. *See Doe v. Woodford*, 508 F.3d 563, 572 (9th Cir. 2007) ("We have no doubt that the decision to plead guilty is a difficult one for many Petitioners, but the fact that one struggles with the decision, and might later even come to regret it, does not render it coerced."). The record conclusively shows that the only evidence supporting Petitioner's

---

[2] Hart also provided a copy of one page of the agreement, which Defendant allegedly edited and emailed to her. Hart Decl. Ex. B. The email, however, was too faint to be legible.

claims is Petitioner's own statement. Because this Court finds Petitioner's testimony is not credible, no hearing is required on this matter. *Shah*, 878 F.2d at 1159.

### 2. Failure to Research His Case

Petitioner alleges that his attorney failed to research his case adequately. Habeas Motion at 11. Assuming for the moment that counsel did in fact fail to conduct some research, Petitioner does not explain how such research affected his decision to plead guilty. "[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the Petitioner by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." *Hill*, 474 U.S. at 59. "This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial." *Id.* Here, Petitioner alleges that his attorney did not investigate his "asserted defense" that he had no knowledge of the conspiracy and that his involvement with his co-Petitioners was limited to legal activities. Habeas Motion at 37-39. This argument fails because Petitioner has not shown that such an investigation would have led to the discovery of exculpatory evidence. Thus, he has not shown that additional research would have changed the outcome of a trial or altered his attorney's recommendation.

Further, Ms. Hart testified that she engaged in lengthy and detailed research. Specifically, she testifies that she spent several full days researching mortgage fraud, bank fraud and conspiracy. Hart Decl. ¶ 16. She describes that she received and reviewed "voluminous discovery" from the government and retained a paralegal to help analyze the details of the government's allegations. *Id.* at ¶¶ 21-22. She also testifies that she travelled to Bakersfield to review F.B.I. records seized from Petitioner's house. *Id.* at ¶¶ 28. This research led her to the following conclusion: "[g]iven the numerous false statements in loan and real estate documents, given the fact that [Petitioner] was the broker of record in numerous

transactions, and given that [Petitioner] expressly wanted to assist his son, I am confident that the facts and evidence supported my recommendation to [Petitioner] that he plead guilty." *Id.* at ¶ 45.

For the reasons discussed above, Petitioner fails to meet the *Strickland* standard and his § 2255 motion, premised on a theory of his attorney's failure to research, fails. Because the record conclusively show that the petitioner is entitled to no relief, no hearing is required on this matter. *Shah*, 878 F.2d at 1159.

### 3. Failure to Request Psychiatric Exam

Petitioner argues that his attorney's failure to demand a psychiatric evaluation was ineffective assistance of counsel. Habeas Motion at 39. Petitioner has not shown, however, that this failure prejudiced him by causing him to plead guilty rather than go to trial or that having the exam would have led his attorney to change her recommendation as to the plea. *Hill*, 474 U.S. at 59.

This is the first instance in which Petitioner has raised the issue of his own competency to the Court. In addition to his own declaration, he provides a letter from his physician and psychotherapist. His physician states that he has treated Petitioner for hypertension, diabetes, heart disease, severe anxiety and depression. Letter from Emmanuel Strategos, M.D. ("Strategos Letter"), Doc. 547, Ex. 1. Dr. Strategos reports that he has prescribed various medications to Petitioner to treat his anxiety, insomnia, and depression over the years. *Id*. His psychotherapist wrote that she treated Petitioner for major depressive disorder and anxiety, and that Petitioner requires psychotropic medication to manage his symptoms. Letter from Bonnie Quinton, L.C.S.W. ("Quinton Letter"), Doc. 547, Ex. 3. The letters, however, do not raise the issue of Petitioner's cognitive state during the proceedings.

"Competence is defined as the ability to understand the proceedings and to assist counsel in preparing a defense." *Miles v. Stainer*, 108 F.3d 1109, 1112 (9th Cir. 1997) (citing *Dusky v. United States*, 362 U.S. 402, 402 (1960)). When analyzing competence to plead guilty, Court looks to whether a

13

Petitioner has "the ability to make a reasoned choice among the alternatives presented to him." *Id* "Whether a Petitioner is capable of understanding the proceedings and assisting counsel is dependent upon evidence of the Petitioner's irrational behavior, his demeanor in court, and any prior medical opinions on his competence." *Id.* (citing *Drope v. Missouri*, 420 U.S. 162, 180 (1975)).

Petitioner's counsel would have had a duty to request a competency hearing if she harbored "substantial doubt" about his competency to make a reasoned decision. *See, e.g., Boag v. Raines*, 769 F.2d 1341, 1343 (9th Cir. 1985) ("In a habeas proceeding, a petitioner is entitled to an evidentiary hearing on the issue of competency to stand trial if he presents sufficient facts to create a real and substantial doubt as to his competency, even if those facts were not presented to the trial court."). A "substantial doubt" exists in this regard "when there is substantial evidence of incompetence." *Deere v. Woodford*, 339 F.3d 1084, 1086 (9th Cir. 2003) (internal quotation marks omitted).

The trial record and new documents reveal no evidence suggesting that Petitioner's counsel should have harbored substantial doubt as to his competency. The reasons Petitioner has provided are both unpersuasive and uncorroborated. The fact that Petitioner may have been on psychiatric medication during the proceedings is not sufficient to establish reasonable grounds to believe that Petitioner might have been so mentally compromised as to be unable to make a reasoned decision. Petitioner now claims that his medication caused him to experience symptoms including disorientation, "lightheadedness," periodic mental "blank-outs," and "an inability to understand and/or comprehend anything that was given to me to read, or that was said to me." Habeas Motion at 25-26. Petitioner however, provides no evidence that the medication he was on would cause such severe symptoms. *See United States v. Hardimon*, 700 F.3d 940, 944 (7th Cir. 2012) (finding that anti-anxiety medications "are taken by millions of people, and it can't just be assumed from the fact that someone is taking them that he can't think straight.").

14

Moreover, in a 35-page declaration, Ms. Hart testified that, in her many interactions with Petitioner during the course of her representation, she saw nothing to indicate that Petitioner abused alcohol or was rendered irrational by medication. Hart Decl. ¶¶ 4-14. She also testified that she had many interactions with Petitioner regarding his plea agreement and that he appeared to be "sober, rational, and serious" at his Plea Hearing. *Id.* ¶¶ 38-39. His attorney did not consider his anxiety "to be a condition that in any way affected his thought process;" and she reports that Petitioner "never mentioned blackouts, hearing voices, altered mental states, or any of the conditions that would have called for me to request the court to appoint a psychiatrist to examine him." *Id.* at 9. In the course of her research, she spoke with Petitioner's wife, son and psychotherapist and reviewed his medical records. *Id.* at ¶ 33. This evidence led her to conclude that a mental defense would not have been effective in the face of allegations that spanned a number of years. *Id.* at ¶ 9.

Ms. Hart's testimony is consistent with the undersigned judge's own perception of Petitioner's behavior in the courtroom. *See Shah*, 878 F.2d at 1159 ("[J]udges may use their own notes and recollections of the plea hearing and sentencing process to supplement the record."). The Court is always aware of the possibility that a defendant may not be physically or mentally competent to enter a plea. The Court is required to, and in fact did, pay close attention to Petitioner's conduct and would have inquired if it suspected that he was deficient in any manner. Petitioner's conduct gave this Court no reason to believe that he was incompetent to proceed. Petitioner was alert, answered all of the Court's questions, and interacted with his attorneys as expected in that type of proceeding. At no time (during either the plea colloquy or sentencing) did the Court have even the slightest concern that Petitioner might have been impaired.

After careful consideration of the trial record and the additional documents submitted by the parties, this Court finds that there is no evidence that supports Petitioner's claim that he was not capable

15

of making a reasoned choice among the alternatives presented to him by his attorney -beyond his own self-serving statements. Such palpably false assertions do not warrant a hearing or relief under Section 2255. *Frazer v. United States*, 18 F.3d 778, 781 (9th Cir. 1994) (no hearing required when the issue of the prisoner's credibility can be "conclusively decided on the basis of documentary testimony and evidence in the record").

Moreover, there is a strong presumption that a counsel's strategic choices fall within the wide range of reasonable professional assistance. *Langford v. Day*, 110 F.3d 1380, 1387 (9th Cir. 1996). Given that the record furnishes no reason to believe that further psychiatric evaluation would have created an issue regarding Petitioner's mental competence, his attorney's decision not to explore the question fell well within the reasonable range of professional conduct. Therefore, Petitioner fails to meet the *Strickland* standard and his § 2255 motion, premised on his attorney's failure to secure a psychiatric evaluation, fails.

C.     **Petitioner's Sentencing Challenge**

Petitioner seeks to have his sentence set aside on the basis that this guilty plea was involuntary. *Alonso*, 552 F. App'x at 717. As described above, this Court finds that there is no credible evidence supporting the assertion that his guilty plea was involuntary. Therefore, the Court DENIES Petitioner's request to set aside his sentence.

D.     **Certificate of Appealability**

A Petitioner cannot appeal from the denial or dismissal of his § 2255 motion unless he has first obtained a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). A certificate of appealability will issue only when a Petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard when the Court has dismissed a § 2255 motion (or claims within a § 2255 motion) on procedural grounds, a Petitioner must show that

reasonable jurists would find debatable (1) whether the court was correct in its procedural ruling, and (2) whether the motion states a valid claim of the denial of a constitutional right. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When the Court has denied a § 2255 motion or claims within the motion on the merits, a Petitioner must show that reasonable jurists would find the Court's decision on the merits to be debatable or wrong. *Id*. The Court finds that Petitioner has not made any showing, let alone a substantial one, of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Court further finds that reasonable jurists would not find the Court's assessment of Petitioner's claims debatable or wrong. *Slack*, 529 U.S. at 483. Accordingly, the Court declines to issue a certificate of appealability.

## V. **CONCLUSION AND ORDER**

For the reason discussed above, this Court DENIES Petitioner's § 2255 motion to vacate, set aside, or correct sentence. The Court also DECLINES to issue a certificate of appealability.

IT IS SO ORDERED.

Dated: __**August 19, 2015**__          __/s/ Lawrence J. O'Neill__
                                         UNITED STATES DISTRICT JUDGE