UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CARLYLE LEE COLE et al.,<br><br>Defendant. | No. 1:11-cr-00026-NONE<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. Nos. 650, 658) |

Pending before the court is a motion for a reduction of sentence and a subsequently filed supplemental request for the immediate granting of relief filed on behalf of defendant Carlyle Lee Cole pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. Nos. 650, 658.) The motions are largely based on defendant's medical condition and the risks allegedly posed to him by the coronavirus ("COVID-19") pandemic. (*Id.*) For the reasons below, defendant's motions will be denied.

**BACKGROUND**

On January 13, 2011, defendant Cole was charged by way of indictment with one count of conspiracy to commit mail fraud, wire fraud, and bank fraud in violation of 18 U.S.C. § 1349 (Count 1); 33 counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts 2–34); 10 counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 35–44); 11 counts of bank fraud and aiding and abetting bank fraud in violation of 18 U.S.C. §§ 1344 and 2 (Counts 45–55); and one count of conspiracy to launder money in violation of 18 U.S.C. § 1956(h) (Count 56). (Doc. No. 1.) The

government's case against defendant focused on his leadership role in a massive scheme to defraud various mortgage lenders through the use of straw buyers in order to artificially inflate the prices of homes so that the true owners of the properties could fraudulently extract the purported increased equity from each home sale. (Doc. No. 322 (Presentence Report, "PSR") at 5–8.) Defendant Cole and his co-defendant David Crisp owned and operated Crisp, Cole Associates (aka Crisp & Cole Real Estate (CCRE)), a real estate brokerage firm, and Tower Lending, an affiliated mortgage brokerage. (*Id.* at 6.) Defendant Cole was the licensed real estate broker for Tower Lending's loan operations, including the many loans the defendants obtained in furtherance of the conspiracy based on false and fraudulent representations and documentation. (*Id.*) Co-defendant Julie Farmer was CCRE's Chief Operating Officer and managed that business's operation and accounts. (*Id.*) Crisp and Cole (and to a lesser degree and Farmer) were found to have managed the conspiracy to defraud the lenders and it was they who directed their many co-defendants, including family members, in carrying out the massive fraud. (*Id.*) The mortgage lenders suffered losses totaling nearly $30 million as a result of the defendants' fraudulent scheme. (*Id.* at 7.)

On November 1, 2013, defendant Carlyle Cole entered a guilty plea to Count 1: conspiracy to commit mail fraud, wire fraud, and bank fraud. (Doc. Nos. 232, 241, 269.) Pursuant to his plea agreement defendant Cole agreed not to seek a downward departure of his offense level or his criminal history category and retained the right only to argue for a downward variance in consideration of the factors set forth at 18 U.S.C. § 3553(a) to a sentence of not less than eight years in prison. (Doc. No. 232 at 5–6.) Following his guilty plea, it was determined that under the U.S. Sentencing Guidelines, defendant Cole's adjusted offense level was 36[1] and

---

[1] This adjusted offense level was consistent with the defendant's agreed upon calculation of the guidelines set forth in his plea agreement. (Doc. No. 232 at 5.) It is relevant to note that the plea offer made to defendant Carlyle Cole was a "package offer" by which the charges against his son, Caleb Lee Cole, were also resolved. By all accounts, including Carlyle Cole's, Caleb was involved in this conspiracy due to the influence of his father. Caleb Cole entered a plea of guilty to mail fraud in violation of 18 U.S.C. § 1341 and was sentenced to a six month term of imprisonment despite an advisory sentencing guideline range calling for a term of imprisonment of 27 to 33 months. (Doc. Nos. 330, 366, 464.)

his criminal history category was I, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 188 and 235 months. (PSR at 18.) The U.S. Probation Office recommended a downward variance from the advisory sentencing guideline range to a term of imprisonment of 120 months based upon consideration of the § 3553(a) sentencing factors, specifically the defendant's age (66 at the time of his sentencing) and medical and mental health issues. (*Id.* at 16–18.) At defendant's sentencing hearing on March 3, 2014, the government, which pursuant to the parties' plea agreement had agreed to recommend a sentence within the applicable guideline range, recommended a sentence of 211 months at the middle of that range. (Doc. No. 464 at 25.) The government argued that the factors relied upon by the probation officer in recommending a downward variance should result in no more than a reduction to the mid-range of the guidelines from what would otherwise be a top of the guideline sentence given the egregious nature of the defendant's criminal conduct and the nearly $30 million in losses it caused. (*Id.*) The sentencing judge followed the government's sentencing recommendation and sentenced defendant Cole to a mid-guideline range sentence of 211 months in the custody of the U.S. Bureau of Prisons. (Doc. No. 367.) In addition, the court imposed a 60 month term of supervised release to follow the term of imprisonment, the mandatory $100 special assessment and ordered the defendant to pay $28,516,887.47 in restitution. (*Id.* at 3, 5.) Pursuant to the parties' plea agreement, the government dismissed the remaining counts against defendant Carlyle Cole.[2]

Defendant Carlyle Cole is currently serving his term of imprisonment at the U.S. Bureau of Prisons ("BOP"), Lompoc Federal Correctional Institution in Lompoc, California ("FCI Lompoc"). (Doc. No. 658 at 1.) On May 6, 2020, defendant filed a *pro se* motion for compassionate release. (Doc. No. 650.) By and through his subsequently appointed counsel, on

---

[2] On February 23, 2015 defendant moved to vacate, set aside or correct his sentence pursuant to 18 U.S.C. § 2255, in large part based upon his claims that he had received ineffective assistance of counsel, including a claim that he had been coerced and "forcibly ordered" by his counsel to sign his plea agreement. (Doc. No. 547.) On August 20, 2015, defendant's motion was denied with the court declining to issue a certificate of appealability. (Doc. No. 591.) Defendant appealed from that order denying his § 2255 motion but on June 1, 2016, the Ninth Circuit denied his request for a certificate of appealability. (Doc. No. 626.)

June 8, 2020, defendant filed a supplemental motion for compassionate release. (Doc. No. 658.) The government filed its opposition on June 19, 2020, (Doc. No. 659) and defendant filed his reply on June 29, 2020 (Doc. No. 660). The government filed a supplemental opposition to the pending motion on July 6, 2020 at the request of defendant. (Doc. No. 661.) Finally, on October 13, 2020 and December 10, 2020, the court received letters from defendant's sons, Caleb Cole and Alan Cole, in support of the pending compassionate release motion. (Doc. Nos. 665, 672.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[3] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –

---

[3] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

4

      (i)      extraordinary and compelling reasons warrant such a reduction; or

      (ii)     the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[4]

The policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[5]; *see also United States v. Gonzalez*,

---

[4] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[5] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit has recently held "that the current version of U.S.S.G. §1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.* The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g.*, *United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement §1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ("In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by

6

defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'" (citation omitted)); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

**ANALYSIS**

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 461 F. Supp. 3d at 970; *United States v. Trent*, Case No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9,

2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

A.   **Administrative Exhaustion**

Here, the government concedes that defendant Cole exhausted his administrative remedies when he submitted a request for compassionate release on April 4, 2020 and the instant motions were filed on May 8, 2020 and June 8, 2020, "more than 30 days after his release request was made" without any action taken by BOP. (Doc. No. 659 at 4.)  Because failure to exhaust is normally viewed as an affirmative defense, which must be pled and proven, the court will accept the government's concession of exhaustion of administrative remedies and turn to the merits of defendant's motion for compassionate release.

B.   **Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA.  *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).  Moreover, in light of the Ninth Circuit's decision in *Aruda,* while U.S.S.G. § 1B1.13 may inform its determination, this court is not restricted thereby and instead has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111.

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive examples of terminal illnesses that may warrant the granting of a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or

mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)   suffering from a serious physical or medical condition,
>
> (II)  suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts during the height of the pandemic concluded that the risks posed by COVID-19 may tip the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331 at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1 (B). In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020).

Here, because defendant has served neither 10 years in prison nor 75% of his prison sentence, he must establish that his medical condition warrants compassionate release under the more stringent standard for "extraordinary and compelling reasons." Specifically, defendant must

demonstrate he will not recover from a "serious" medical condition that "substantially diminishes" his "ability . . . to provide self-care within" FCI Lompoc. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Defendant Carlyle is now almost 74 years old. (Doc. No. 658 at 2.) He continues to suffer from high blood pressure, diabetes, anxiety, and glaucoma. (*Id.*; PSR at 11.)[6] Defendant was diagnosed with and treated for prostate cancer in 2002, which was in remission at the time of his sentencing in 2014. (*Id.*) Defendant's BOP medical records confirm that defendant continues to suffer from benign essential hypertension, Type 2 diabetes, age-related cataracts, "severe" glaucoma, asthma, a "disorder of prostate," and other ailments. (Doc. No. 658-6 at 14–15.) With respect to defendant's asthma, it is noted that he has "reactive airways" and experiences "wheezing with [an upper respiratory infection]." (*Id.*)

According to the U.S. Centers for Disease Control ("CDC"), defendant is at higher risk of becoming severely ill were he to contract COVID-19 because of his Type 2 diabetes, his prostate cancer that is in remission,[7] hand is high blood pressure and/or benign essential hypertension. *See COVID-19: People at Increased Risk*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html (last visited June 11, 2021) (explaining these conditions "can make you more likely to get severely ill from COVID-19"). Based on defendant's BOP medical records submitted in support of his motion, the court also concludes that defendant Cole suffers from moderate asthma and thus he is at risk from severe illness were he to contract COVID-19 due to that condition as well. *Id.* Finally, defendant is at increased risk of suffering a severe illness were he to contract COVID-19 because he is almost 74 years old, though the CDC states that "[p]eople 85 and older are the most likely to get very sick." *Id.* Therefore, defendant is at higher risk for contracting a severe illness from

---

[6] Defendant states he has "heart disease." (Doc. No. 658 at 2.) It may be that defendant is referring to his "heart palpitations." (PSR at 11.) The court does note that defendant is currently prescribed "Atorvastatin," which helps prevent heart attacks and treats high blood pressure, and "Lisinopril," which may be used to treat both heart failure and high blood pressure. (Doc. No. 659-1 at 18–19.)

[7] Although defendant's cancer appears to still be in remission, it also appears he continues to suffer some side effects as a result of his prostate cancer.

COVID-19 based on four separate medical conditions from which he suffers, and may also be at risk in that regard due to his age.

Defendant also tested positive for COVID-19 during his imprisonment, although his infection appears to have been asymptomatic. (Doc. No. 658-6 at 7–8, 20.) Given the CDC's lack of definitive guidance on re-infection of COVID-19, some courts have "err[ed] on the side of caution to avoid potentially lethal consequences" because "the science is unclear on whether reinfection is possible." *United States v. Yellin*, Case No. 3:15-cr-3181-BTM-1, 2020 WL 3488738, at *13 (S.D. Cal. June 26, 2020) (finding extraordinary and compelling reasons exist where COVID-positive inmate at FCI Terminal Island, who did not develop severe symptoms, had a combination of medical conditions that placed him at risk of COVID complications); *United States v. Hanson*, No. 6:13-cr-00378-AA-1, 2020 WL 3605845, at *4 (D. Or. July 2, 2020) ("[T]here is no current scientific evidence to indicate that a 'recovered' COVID-19 patient is immune from reinfection, as several courts have recently acknowledged. . . . [T]he Court remains concerned about FCI Terminal Island's ability to provide adequate care in light of defendant's complex medical needs. The Court is not convinced that FCI Terminal Island has been successfully mitigating the risk of infection, given the high numbers of infected inmates and defendant's own contraction of the virus."). However, other courts have taken the position that uncertainty surrounding the danger of re-infection "cuts against compassionate release," in part because it is defendant's burden to establish that "extraordinary and compelling" reasons for compassionate release exist. *United States v. Molley*, No. CR15-0254-JCC, 2020 WL 3498482, at *3 (W.D. Wash. June 29, 2020).

The court concludes that defendant Cole is "suffering from a serious physical . . . condition . . . from which he . . . is not expected to recover." *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). His prior cancer, Type 2 diabetes, hypertension, and asthma, especially in light of the COVID-19 pandemic, are all serious medical conditions from which defendant is unlikely to recover. In fact, the government concedes that, at a minimum, defendant's diabetes is a qualifying medical condition. (*See* Doc. No. 659 at 11–12.) Thus, the central inquiry in resolving the pending motion is whether defendant's medical condition "substantially diminishes [his]

ability . . . to provide self-care" in FCI Lompoc at this time. *See* U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii).

FCI Lompoc undoubtedly once suffered from a significant COVID-19 outbreak. The BOP has reported that 597 inmates and 23 staff members at that prison tested positive for the virus but subsequently recovered, while three inmates there died at the hands of COVID-19. *See COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited June 11, 2021). As of the date of this order, however, it is being reported that there are zero inmates and zero staff members at that prison with active cases of COVID-19.[8] *Id.* Even more importantly for purposes of the pending motion, the BOP is currently reporting that 1,180 inmates and 226 staff members at FCC Lompoc have been fully vaccinated.[9] *Id.* As the undersigned has recently acknowledged:

> According to the Centers for Disease Control and Prevention ("CDC"), authorized vaccines in the U.S., including the Pfizer-BioNTech vaccine, "are highly effective at protecting vaccinated people against symptomatic and *severe* COVID-19." . . . At this point, medical evidence strongly suggests that fully vaccinated individuals, . . . are protected against becoming severely ill or dying from COVID-19. Defendant's claim that he may contract the virus, without regard to the severity of any illness, is not a sufficient basis upon which to conclude that he suffers from a "serious" medical condition "that substantially diminishes [his] ability...to provide self-care" in FCI Lompoc.

*United States v. Barajas-Guerrero*, No. 1:17-cr-00148-NONE, 2021 WL 1839728, at *6 (E.D. Cal. May 7, 2021) (citations omitted). In this regard, courts in this circuit and others have recognized that the widespread availability of COVID-19 vaccines within BOP facilities has significantly diminished the risk posed to federal prisoners by the virus and in in turn lessened the degree to which the risks posed by COVID-19 may tip the scale in favor of compassionate release

---

[8] While the undersigned does not necessarily accept these reported numbers at face value in light of current CDC guidelines with respect to both testing and the manner of counting "active cases," there is also no evidence before the court challenging those reported numbers in this case.

[9] FCI Lompoc has a population of 779 inmates. *FCI Lompoc*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/locations/institutions/lof/ (last visited June 11, 2021). USP Lompoc has a total inmate population of 1,067, including those inmates at its satellite camp. (*Id.*) Combined, the institutions compromising Lompoc FCC have a current population of 1,846 inmates.

in cases where prisoners suffer from chronic medical conditions.  *See United States v. Ochoa-Alapisco,* No. 14-378(2) ADM/LIB, 2021 WL 2322680, at *3 (D. Minn. June 7, 2021) (denying compassionate release because "any risk . . . has been substantially reduced because [defendant] is likely now fully vaccinated" which "provides him with significant protection against severe illness or death from COVID-19 should he become reinfected."); *United States v. Willis*, 3:15-cr-00465-BR, 2021 WL 2179256, *3-4 (D. Ore. May 27, 2021) (concluding that federal prisoners who have been fully vaccinated but suffer from chronic medical conditions that would put them at serious risk of severe illness from COVID-19 do not satisfy the extraordinary and compelling standard for compassionate release) (citing cases); *United States v. Smith*, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (finding no extraordinary and compelling reasons for compassionate release where a defendant has been fully vaccinated); *United States v. Grummer*, ___F.Supp.3d___, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19.  Other courts to address the issue have reached similar conclusions."); *United States v. Ballenger*, No. CR 16-5535 BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release.").

Moreover, in this case all of defendant Carlyle Cole's present medical conditions, other than any remaining risk associated with COVID-19, were well known to the sentencing judge at the time that defendant's 211-month sentence was imposed.  (PSR at 11; Doc. No. 339 at 5.)  Indeed, it was these conditions and the defendant's age upon which the presentence report relied in recommending a below guideline sentence of 120 months and upon which defense counsel

relied in arguing for a sentence of 96 months. (PSR at 15, 17–18; Doc. Nos. 339 at 5-6; 464 at 14–16, 19–21.) The sentencing judge fully considered defendant's age and medical and mental health conditions in imposing the mid-guideline range sentence of 211 months recommended by the government. In the undersigned's view, no significant change in those conditions has taken place since the time of defendant's sentencing other than that he is now almost 74 years of age.

For these reasons, the court concludes that defendant has failed to establish that extraordinary and compelling reasons exist warranting his compassionate release under § 3582(c)(1)(A).

**C.     Consistency With the § 3553(a) Factors**

Finally, any relief to be granted pursuant to 18 U.S.C. § 3582(c)(1)(A) must be consistent with the sentencing factors set forth in § 3553(a).[10] *Trent*, 2020 WL 1812242, at *2; *see also Parker*, 461 F. Supp. 3d at 979. Here, even if defendant Cole's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in his sentence would be consistent with consideration of those sentencing factors.

Defendant Carlyle Cole was one of the principal architects of a massive and egregious financial fraud scheme. He defrauded mortgage lenders, a crime that by his own admission he involved his own son in, to the tune of almost $30 million by artificially inflating the prices of homes using straw companies to engage in a series of "frequent[]" sales—all of which occurred

/////

---

[10] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

during a time period leading up to the subprime mortgage crisis.[11] (PSR at 5–9; *see also* 367 at 5 (ordering $28,516,887.47 in restitution).) Moreover, defendant Cole was found to be a leader or organizer of that criminal fraud conspiracy which involved many more than five participants. (PSR at 9.) In opposing defendant's compassionate release, the government highlights the enormous financial loss suffered as a result of defendant's fraudulent criminal conduct. (Doc. No. 659 at 13.) It is apparent in light of the egregious nature of defendant's offense of conviction that consideration of the nature and circumstances of the offense, the need for the sentence imposed to reflect the seriousness of the offense, and to promote respect for the law while providing just punishment and affording adequate deterrence are all factors that weigh against the granting of compassionate release in this case.

Moreover, the court notes that defendant Cole's co-defendant and partner in this scheme to defraud, David Crisp, also pleaded guilty to Count One of the Indictment and was, like Carlyle Cole, sentenced to a 211-month term of imprisonment. (Doc. No. 433.) While the pairs co-defendants in this case received more lenient sentences, those defendants for the most part played far lesser roles in this fraud.[12]

---

[11] John V. Duca, *Subprime Mortgage Crisis*, FEDERAL RESERVE HISTORY (Nov. 22, 2013), https://www.federalreservehistory.org/essays/subprime_mortgage_crisis.

[12] Robinson Dinh Nguyen pleaded guilty to Count 1 and was sentenced to a term of imprisonment of 27 months. (Doc. Nos. 180, 188.) Caleb Lee Cole pleaded guilty to Count 7 and was sentenced to a term of imprisonment of five months, with his father, defendant Carlyle Cole, urging the court for leniency because he was responsible for involving his son in his fraud. (Doc. Nos. 366, 382, 387.) Jayson Peter Costa pleaded guilty to Count 1 and was sentenced to a term of imprisonment of 78 months. (Doc. No. 406.) Jennifer Anne Crisp pleaded guilty to Counts 21 and 43 (mail and wire fraud) and was sentenced to a term of probation of five years for each count to run concurrently. (Doc. Nos. 431, 540.) Michael Angelo Munoz pleaded guilty to Counts 26 and 28 (both mail fraud) and was sentenced to a term of imprisonment of 24 months for each count to run concurrently. (Doc. No. 460.) Jeriel Salinas pleaded guilty to Count 1 and was sentenced to a term of imprisonment of 19 months. (Doc. No. 471.) Sneha Ramesh Mohammadi pleaded guilty to Count 1 and was sentenced to a term of imprisonment of 18 months. (Doc. No. 539.) Julie Farmer was convicted following a jury trial on Counts 1 (conspiracy), 2 (mail fraud), 3 (mail fraud), 37 (wire fraud), and 38 (wire fraud) and was sentenced to a term of imprisonment of 36 months on each count to run concurrently. (Doc. No. 528 at 1–2.) While defendant Farmer was found to be part of the core of the Crisp and Cole operation, the sentencing judge also concluded that she was far less sophisticated than the two principals and had been influenced, particularly by defendant Crisp. (Doc. No. 526.)

Finally, "[t]he length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"). Here, with good time credits taken into account, defendant Cole's anticipated release date from prison is in January of 2029. Were his motion for compassionate release to now be granted, he would have served only approximately 87-months of his 211-month sentence. In the undersigned's view such a sentence would create sentencing disparity concerns given the sentences imposed on defendants who were far less responsible for the fraud. In addition, such a reduction in defendant's mid-guideline range sentence of 211 months would not adequately reflect the seriousness of his offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct. *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

Thus, on balance, the court finds that granting defendant's motion and reducing his sentence to one of time served would not be consistent with consideration of the § 3553(a) sentencing factors.

## CONCLUSION

Because defendant Carlyle Cole has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A)

/////
/////
/////
/////
/////

16

or that such a reduction at this time would be consistent with consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. Nos. 650, 658) is denied.

IT IS SO ORDERED.

Dated:   **June 11, 2021**

_____
UNITED STATES DISTRICT JUDGE