UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CARLYLE LEE COLE,<br><br>　　　　Defendant. | Case No. 1:11-cr-00026-JLT-2<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br>(Docs. 702, 720) |

Carlyle Lee Cole seeking a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). (Doc. 720.) The motion largely is based on the progression of Cole's health issues; his advanced age; his rehabilitation while incarcerated; and time served on a lengthy sentence. (*Id.*) For the reasons discussed below, the motion will be denied.

**I. RELEVANT BACKGROUND**

On January 13, 2011, Cole was indicted on one count of conspiracy to commit mail fraud, wire fraud, and bank fraud in violation of 18 U.S.C. § 1349 (Count 1); 33 counts of mail fraud in violation of 18 U.S.C. § 1341 (Counts 2–34); 10 counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 35–44); 11 counts of bank fraud and aiding and abetting bank fraud in violation of 18 U.S.C. §§ 1344 and 2 (Counts 45–55); and one count of conspiracy to launder money in violation of 18 U.S.C. § 1956(h) (Count 56). (Doc. 1.) The government's case against Cole focused on his leadership role in a massive scheme to defraud various mortgage lenders using straw buyers to artificially inflate the

1

prices of homes so that the true owners of the properties could fraudulently extract the purported increased equity from each home sale. (Doc. 322 at 5–8.) Cole and his co-defendant David Crisp, owned and operated Crisp, Cole Associates (aka Crisp & Cole Real Estate (CCRE)), a real estate brokerage firm, and Tower Lending, an affiliated mortgage brokerage. (*Id.* at 6.) Cole was the licensed real estate broker for Tower Lending's loan operations, including the many loans the defendants obtained in furtherance of the conspiracy based on false and fraudulent representations and documentation. (*Id.*) Co-defendant Julie Farmer was CCRE's chief operating officer and managed that business's operation and accounts. (*Id.*) Crisp and Cole (and to a lesser degree Farmer) were found to have managed the conspiracy to defraud the lenders and it was they who directed their many co-defendants, including family members, in carrying out the massive fraud. (*Id.*) The mortgage lenders suffered losses totaling nearly $30 million as a result of the defendants' fraudulent scheme. (*Id.* at 7.)

On November 1, 2013, Cole entered a guilty plea to Count 1. (Docs. 232, 241, 269, 322 at 5-8.) Pursuant to his plea agreement Cole agreed not to seek a downward departure of his offense level or his criminal history category and retained the right only to argue for a downward variance in consideration of the factors set forth at 18 U.S.C. § 3553(a) to a sentence of not less than 8 years in prison. (Doc. 232 at 5–6.) Following his guilty plea, the U.S. Probation Office Presentence Report calculated, under the United States Sentencing Guidelines, that Cole's adjusted offense level was 36[1] and his criminal history category was I, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 188 and 235 months. (Doc. 322 at 18.) The Probation Office recommended a downward variance from the advisory sentencing Guideline range to a term of imprisonment of 120 months based upon consideration of the § 3553(a) sentencing factors, specifically Cole's age (66 at the time of his sentencing) and medical and mental health issues. (*Id.* at 16–18.)

---

[1] This adjusted offense level was consistent with Cole's agreed upon calculation of the Guidelines set forth in his plea agreement. (Doc. 232 at 5.) The plea offer made to Cole was a "package offer" by which the charges against his son, Caleb Lee Cole, were also resolved. By all accounts, Caleb was involved in this conspiracy due to the influence of his father. Caleb Cole entered a plea of guilty to mail fraud in violation of 18 U.S.C. § 1341 and was sentenced to a six month term of imprisonment despite an advisory sentencing Guideline range calling for a term of imprisonment of 27 to 33 months. (Docs. 330, 366, 464.)

2

At Cole's sentencing hearing on March 3, 2014, the government recommend a middle-range guideline sentence of 211 months. (Doc. 464 at 25.) The government argued that the factors relied upon by the Probation Office in recommending a downward variance should result in no more than a reduction to the mid-range of the guidelines from what would otherwise be a top of the guideline sentence given the egregious nature of the Cole's criminal conduct and the nearly $30 million in losses it caused. (*Id*.) The sentencing judge followed the government's sentencing recommendation and sentenced Cole to a mid-Guideline range sentence of 211 months in the custody of the U.S. Bureau of Prisons. (Doc. 367.) In addition, the sentencing court imposed a 60 month term of supervised release to follow the term of imprisonment, the mandatory $100 special assessment and ordered Cole to pay $28,516,887.47 in restitution. (*Id.* at 3, 5.) Pursuant to the parties' plea agreement, the government dismissed the remaining counts against Cole.[2]

On May 6, 2020, Cole filed a *pro se* motion for compassionate release. (Doc. 650.) On June 8, 2020, through counsel, Cole filed a supplemental motion for compassionate release pursuant to 18 U.S.C. 3582(c)(1)(A). (Doc. 658.) On June 11, 2021, the Court denied Cole's motions for compassionate release finding Cole had failed to establish extraordinary and compelling reasons warranting his compassionate release under § 3582(c)(1)(A). (Doc. 674 at 14.) The Court further found that granting Cole's motion and reducing his sentence to time served would not be consistent with consideration of the § 3553(a) sentencing factors. (*Id.* at 16.)[3]

Cole is currently serving his term of imprisonment at the BOP's Lompoc Federal Correctional Institution in Lompoc, California ("FCI Lompoc"). (Doc. 658 at 1.) Cole has a projected release

---

[2] On February 23, 2015, Cole moved to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, challenging the legality of his plea and sentence based on claims of ineffective assistance of counsel, denial of due process, incompetency, and erroneous loss and restitution amounts. (*See generally* Doc. 547.) On August 20, 2015, the Court denied Cole's motion and declined to issue a certificate of appealability. (Doc. 591.) Cole appealed from the order denying his § 2255 motion. (Doc. 594), but on June 1, 2016, the Ninth Circuit denied his request for a certificate of appealability. (Doc. 626.)

[3] On February 13, 2023, Cole filed a document entitled "Motion Under Fed. R. Civ. P. Rules 60, 59, 35, 32 for Correction of Sentence." (Doc. 697.) In it, among other things, Cole again challenged his plea and sentence, arguing that "[t]he entire plea process was characterized by plain error in the abandonment of due process, miscalculation of loss amounts leading to an unlawful sentence, and the denial of Constitutional Rights." (*Id*. at 12.) Cole focused on the violation of his Constitutional rights, including receiving ineffective assistance of counsel and sentence terms that were "illegal and constitutionally invalid because they were based on inflated loss amounts." (*Id.* at 2-3, 10-11.) On August 22, 2024, the Court denied Cole's motion construed as a renewed motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255. (Doc. 722.)

date of January 28, 2028, based upon application of good time and FSA credits. (Doc. 724-1 at 3); 18 U.S.C. § 3624(b)(1); *see also United States v. Burrill*, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020) (In determining a defendant's projected release date, courts may take into account any good time credits).

On July 16, 2024, Cole filed the instant motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The government filed its opposition on September 20, 2024 (Doc. 724 ) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and Cole filed his reply on November 4, 2024 (Doc. 731) supported by his declaration (Doc. 731-1) and a list of his community and civic activities (Doc. 731-2). .

## II. LEGAL STANDARDS

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Under the First Step Act of 2018 ("the FSA"), imprisoned defendants may bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A). A defendant bears the burden of "establish[ing] his eligibility for compassionate release." *United States v. Wright*, 46 F.4th 938, 951 (9th Cir. 2022).

First, defendants petitioning for compassionate release must exhaust administrative remedies. Once they do so, courts consider whether "extraordinary and compelling reasons warrant" the requested reduction. 18 U.S.C. § 3582(c)(1)(A). Then, the court must consider the sentencing factors enumerated in 18 U.S.C. § 3553(a). *Id.*; *see also United States v. Keller*, 2 F.4th 1278, 1284 (9th Cir. 2021) (if a court finds that extraordinary and compelling circumstances exist, it must then look at the § 3553 factors to determine if these support a sentence reduction).

Section 3582 further requires a reduction to be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* In 2023, the Sentencing Commission issued a policy statement addressing what qualifies as "extraordinary and compelling reasons" to release a defendant

4

from BOP custody. U.S.S.G. 1B1.13 (last amended Nov. 1, 2023). The Court refers to the Sentencing Commission's policy statement for guidance. *See United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam) (Stating that "The Sentencing Commission's statements in U.S.S.G. 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding."); *see also United States v. Maumau*, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) ("[O]ne of the express purposes of the First Step Act was to increase the use and transparency of compassionate release."); *United States v. Gonzalez*, 2024 WL 705711, at *2 (9th Cir. Feb. 21, 2024) (citing *Aruda*, 993 F.3d at 802) (while U.S.S.G. 1B1.13 is not binding, it "may inform a district court's discretion" for compassionate release motions). The amendments contain six types of circumstances that may qualify as "extraordinary and compelling." *Id*. These are 1) the medical circumstances of the defendant, 2) the age of the defendant, 3) the family circumstances of the defendant, 4) whether the defendant was a victim of abuse while in custody, 5) other reasons that are similar in gravity to 1-4, and 6) an unusually long sentence. USSG § 1B1.13, (last amended Nov. 1, 2023).

### III. ANALYSIS

**A.   Administrative Exhaustion**

The government concedes that Cole exhausted his administrative remedies when he submitted a request for compassionate release on April 4, 2024, and the instant motion was filed on July 16, 2024, "more than 30 days after his release request was made" without any action taken by BOP.[4] (Doc. 724 at 3.) Because failure to exhaust is normally viewed as an affirmative defense, which must be pled and proven, the Court will accept the government's concession of exhaustion of administrative remedies and turn to the merits of Cole's motion for compassionate release.

**B.   Extraordinary and Compelling Reasons**

   **1.   Medical Circumstances**

Cole argues that he qualifies for relief under 18 U.S.C. § 3582(c)(1)(A) and a 39-month reduction in his 211-month sentence based on medical conditions that include stage 4 (severe) kidney disease and renal failure; unspecified immune deficiency; asthma; high blood pressure; high

---

[4] Cole avers that he submitted the request on April 22, 2024. (Doc. 720-1 at 1.)

cholesterol; diabetes; and conditions of advanced age including glaucoma and cataracts. (Doc. 720 at 2-5; Docs. 720-1, 720-2, 720-3, 720-4.) Cole argues that in the time following the Court's denial of his Prior Motion, Cole has increasingly relied upon more than a dozen medications to control these ailments including daily insulin shots. (*Id.*)

The government responds that Cole's medical conditions do not justify an extraordinary reduction in sentence to time served. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *see also* Doc. 724 at 4-6 citing *United States v. Ayon-Nunez*, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12, 2020) ([C]hronic conditions "that can be managed in prison are not a sufficient basis for compassionate release.").) ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ Relatedly, the government argues that Cole has not established that he is at risk of serious deterioration or death based on the lack of specialized care at FCI Lompoc. (*Id.*)

At the time of sentencing, Cole (1) presented a history of prostate cancer in remission along with then current conditions of glaucoma, diabetes, and heart palpitations; sleep apnea; anxiety attacks, and depression, and (2) was taking nearly a dozen medications including psychotropic medication. (Doc. 322 at 11; *see also* Doc. 339 at 5.) The PSR expressly contemplated Cole's medical and mental issues would be treated in prison. (*Id.* at 15.)

When the Court denied Cole's Prior Motion in 2021, it observed that (1) Cole's high blood pressure, diabetes, anxiety, history of prostate cancer, and glaucoma were considered by the sentencing court when it sentenced him to 211 months (Doc. 674 at 10-11, 13-14 citing Doc. 658 at 2, Doc. 322 at 11; *see also* Doc. 339 at 5), and (2) Cole's BOP medical records confirmed that at age 74 he continued to suffer from heart disease, high blood pressure, cholesterol, thyroid, diabetes, glaucoma and cataract issues, asthma, periodontitis, a skin disorder related to radiation treatment, low back pain, UTI, and prostate disorder – all of which were being monitored and treated at FCI Lompoc including with more than a dozen medications. (Doc. 674 at 14; Doc. 658 at 1-2; Doc. 658-6 at 14-19; *see also* Doc. 659-1 at 18-27.) At that time, the Court found that Cole presented serious

1  medical conditions in the context of the then prevailing COVID-19 pandemic and that he was
2  unlikely to recover. (Doc. 674 at 11.) Still, the Court concluded that "no significant change in those
3  conditions has taken place since the time of defendant's sentencing other than that he is now almost
4  74 years of age." (*Id.*)
5      The Court recognizes the authority under U.S.S.G. 1B1.13(b)(1) that certain medical
6  conditions may warrant compassionate release. ███████████████████████████████████
7  ████████████████████████████████████████████████████████████████████████████████
8  ████████████████████████████████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████████████████████████████████
11 ████████████████████████████████████████████████████████████████████████████████
12 ████████████████████████████████████████████████████████████████████████████████
13 ████████████████████████████████████████████████████████████████████████████████
14 ██████████████████████████████████████
15      ████████████████████████████████████████████████████████████████████████████
16 ████████████████████████████████████████████████████████████████████████████████
17 ████████████████████████████████████████████████████████████████████████████████
18 ██████████████████████████████ As the government has observed, "the BOP is accredited to provide
19 essential medical services, including through the monitoring of inmates with chronic or acute
20 medical conditions and appropriate referrals as necessary." (*See* Doc. 346 at 6 citing
21 http://www.bop.gov/inmates/custody_and_care/medical_care.jsp.) ███████████████████
22 ████████████████████████████████████████████████████████████████████████████████
23 ████████████████████████
24      In sum, Cole fails to establish that his medical circumstances qualify for relief pursuant to 18
25 U.S.C. § 3582(c)(1)(A) and a time served sentence. Compassionate release is only granted for
26 "extraordinary and compelling reasons." *Gonzalez*, 2024 WL 705711, at * 1 (citing *Aruda*, 993 F.3d
27 at 799) (quoting 18 U.S.C. § 3582(c)(1)(A)). The compassionate release statute was intended to
28 provide a "safety valve" in situations where a defendant's circumstances had changed such that the

1 length of continued incarceration no longer remained equitable. *United States v. Chen*, 48 F.4th
2 1092, 1098-99 (9th Cir. 2022). Cole has not established the equities weigh in favor of a time served
3 sentence.
4 Furthermore, nothing before the Court suggests that Cole needs specialized care that is not
5 presently available at or through FCI Lompoc. *See Gonzalez*, 2024 WL 705711, at *1 (citing *Ayon-*
6 *Nunez* 2020 WL 704785, at *2) (if defendant receives sufficient medical care while in prison, then
7 his health issues do not present an "extraordinary" or "compelling" reason to grant compassionate
8 release); *United States v. Esparza*, 2024 WL 216558, at *2 (E.D. Cal. Jan. 19, 2024) (denying
9 compassionate release where defendant presented stage 4 kidney disease, diabetes, high cholesterol,
10 and high blood pressure that were being monitored and treated by the BOP); *United States v. George*,
11 2022 WL 17812892, at *3 (E.D. Cal. Dec. 19, 2022) (finding that a diagnoses for chronic conditions
12 that were being monitored and treated did not establish extraordinary and compelling reasons for
13 compassionate release); *United States v. Aguilar-Cortez*, 2022 WL 118407, at *1 (E.D. Cal. Jan. 12,
14 2022) (denying compassionate release of defendant suffering from chronic conditions based in part
15 on BOP's ability to treat his medical conditions); *United States v. McCarns*, 2022 WL 16551701, at
16 *3-4 (E.D. Cal. Oct. 31, 2022) (denying compassionate release where defendant with stage 3 chronic
17 kidney disease was fully vaccinated against COVID-19); *cf. United States v. Martinez*, 2021 WL
18 698208, at *7 (E.D. Cal. Feb. 23, 2021) (granting compassionate release where defendant presented
19 stage 5 kidney disease requiring dialysis and was wheelchair bound during the COVID-19
20 pandemic); *United States v. Fernandez*, 2020 WL 5909490, at *4–5 (E.D. Cal. Oct. 6, 2020) (finding
21 that a defendant's  asthma, chronic kidney disease, and obesity were extraordinary and compelling
22 reasons to grant compassionate release during the COVID-19 pandemic).

23 **2.     Age of the Defendant**
24 Cole argues that he qualifies for relief under 18 U.S.C. § 3582(c)(1)(A) and a time-served
25 sentence because he is at least 65 years old; experiencing a serious deterioration in physical or
26 mental health because of the aging process; and has served at least 10 years of his term of
27 imprisonment. (Doc. 720 at 2-5; Docs. 720-1, 720-2, 720-3, 720-4; *see also* U.S.S.G. 1B1.13(b)(2).)
28 Cole points to the progression in his age-related conditions evident in his 2014 PSR and his BOP

8

medical records and specifically to his increasing reliance upon more than a dozen medications to control these ailments, including daily insulin shots. (*Id.*)

The government argues that Cole's noted age related conditions and the progression thereof have been and are being managed and treated at FCI Lompoc and not a basis for compassionate release, for the same reasons discussed above. (*See* Doc. 724 at 4-6.) The Court agrees and finds that Cole's age related conditions and their progression do not rise to the level of extraordinary and compelling reason for compassionate release.

Cole has not established a serious deterioration in his physical or mental health, for the reasons stated. Particularly, Cole's BOP medical records before the Court do not show a marked decline in his health, ability to care for himself, receive treatment, or the necessity for treatment that is not available at FCI Lompoc. Instead, these records show Cole's various medical and age related conditions are being monitored and treated at FCI Lompoc; that Cole participates in his plan of care including self-care, and the medical limitations on Cole's activities do not impede his ability to function at FCI Lompoc. As noted, Cole has not established that FCI Lompoc is unable to provide any relevant specialized care.

### 3. Rehabilitation and Other Reasons

Cole argues that he qualifies for relief under 18 U.S.C. § 3582(c)(1)(A) and a time-served sentence based on his rehabilitation at FCI Lompoc in combination with (1) his arguments above, (2) the unusually long sentence he received and lengthy time he already has spent in prison. (Doc. 720 at 2-5; *see also* Docs. 720-1, 720-2, 720-3, 720-4; U.S.S.G. 1B1.13(b)(5), (d).) Cole argues that while at FCI Lompoc, he has been discipline-free and has participated in programing including teaching other inmates about real property issues. (Doc. 720 at 2-5; Docs. 720-1, 720-2, 720-3, 720-4.) Cole argues his age, health issues, lengthy incarceration, and likely conditions of supervised release as evidence that he would not engage in illegal activity and is not a danger to any other person or the community. (*Id.*) Cole points to letters in support of his release, and a release plan involving family and friends. (*Id.*)

The Court finds that Cole's rehabilitation proffer, mid-range sentence of 211 months, and time served of 129 months do not cumulate to extraordinary and compelling reason for compassionate

release. Rehabilitation, while not itself an extraordinary and compelling reason for sentence reduction, may be considered in combination with other circumstances in determining whether and to what extent a reduction in a defendant's term of imprisonment is warranted. U.S.S.G. 1B1.13(d). Cole's proffer in support of rehabilitation considered in combination with the other circumstances discussed herein do not cumulate to extraordinary and compelling reason for compassionate release. The Court has not found extraordinary and compelling reason for sentence reduction apart from Cole's rehabilitation proffer. The Court is not persuaded otherwise upon consideration of the rehabilitation proffer. Cole's proffer of community support based upon his conduct prior to conviction, his willingness to follow BOP rules and participate in programming, and his release plan lack sufficient weight to cumulate to extraordinary and compelling reason for a time served sentence.

Additionally, Cole has not argued much less demonstrated that his mid-range sentence was "unusually long" for purposes of U.S.S.G. 1B1.13(6).[5] Thus Cole's arguments relating to the length of his sentence are not properly before the Court and are irrelevant. On the same basis, any suggestion by Cole that the amount of time he has served is "other reason" to grant compassionate release is a non-starter. (*See* section III C, post); *see also* U.S.S.G. 1B1.13(5).

**C.     §3553(a) Factors**

Because the Court concludes that Cole's motion is not supported by extraordinary and compelling reasons, the Court need not reach § 3553(a) sentencing factors.[6] *See Keller*, 2 F.4th at 1284 ("[A]lthough a district court must perform this sequential inquiry before it grants compassionate release, a district court that properly denies compassionate release need not evaluate

---

[5] See n.3 and n.4.

[6] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the Guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

each step"); *see also Wright*, 46 F.4th at 945.

Even upon consideration of these factors, the Court finds the record before it does not weigh in favor of Cole's compassionate release upon serving 129 months of his 211 month sentence. *See* n.6; *USA v. Trent*, 2020 WL 1812242, at *2 (any relief to be granted pursuant to 18 U.S.C. § 3582(c)(1)(A) must be consistent with the sentencing factors set forth in § 3553(a).)  The Court, in denying the Prior Motion, found that on balance Cole's showing in regard to the § 3553(a) factors did not warrant a time served sentence. (Doc. 674 at 14-16 citing *United States v. Purry*, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); 18 U.S.C. § 3553(a).)  The Court's consideration of Cole's further proffer in support of the instant motion is not sufficiently mitigating to find otherwise, for the reasons stated.  Particularly, it is the Court's view that any sentence reduction in this case would not reflect the seriousness of Cole's offense, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal conduct.

**D.  Conclusion**

For the reasons discussed above, Cole's Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A), (Doc. 720), is **DENIED**.

IT IS SO ORDERED.

Dated:   **November 19, 2024**

_____
UNITED STATES DISTRICT JUDGE